RAFAEL SAURÍ, demandante-apelante-apelado, *v.* JOSÉ SAURÍ, CARMEN SAURÍ e ISABEL TRISTANI VIUDA DE SAURÍ, demandados-apelados-apelantes.

No. 3549.—*Visto:* Noviembre 15 y 16, 1927. *Resuelto:* Julio 28, 1928.

*Tous Soto & Pérez Marchand,* abogados del apelante-apelado; *F. Parra Capó* y *José* y *Alberto S. Poventud,* abogados de los apelados-apelantes.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Rafael Saurí radicó una demanda en la cual, como primera causa de acción, trataba de obtener la división de bienes poseídos en común pro indiviso. En una segunda causa de acción reclamaba remuneración por servicios prestados. La Corte de Distrito de Ponce dictó sentencia a favor del demandante en lo referente a la primera causa de acción, y a favor

de los demandados en cuanto a la segunda causa de acción. El demandante y los demandados han apelado separadamente, pero muy propiamente, han presentado una sola transcripción. Consideraremos la apelación del demandante que envuelve la segunda causa de acción.

Al ocurrir la muerte de Félix Saurí y Vivas, en los procedimientos testamentarios particionales, la mitad de sus bienes correspondió a su viuda, y la otra mitad a sus tres hijos, o sea, la sexta parte a cada uno de ellos. En la cláusula diecisiete de la escritura de partición, se convino que los bienes permanecerían indivisos no solamente en lo que se refería a los inmuebles si que también a los muebles. El efecto de todos los procedimientos fué crear una comunidad pro indivisa de toda la sucesión de Félix Saurí, incluyendo la madre. La comunidad así creada o continuada prosiguió hasta que José y Carmen Saurí notificaron a su hermano Rafael Saurí que no deseaban permanecer por más tiempo en la comunidad.

La administración de los bienes de la comunidad fué dejada por convenio a Rafael Saurí, que es el demandante y apelante en este aspecto del litigio.

En su demanda, él alega los servicios que prestó, la gran cantidad de trabajo que hizo, y los muchos beneficios que reportó a la comunidad, ascendentes casi a medio millón de dólares, que se habían acumulado durante su administración, y que por todo este trabajo se le había pagado únicamente la cantidad de treinta dólares semanales. Admite que no se hizo convenio alguno para una remuneración mayor, y dice que la cantidad de seis mil dólares al año sería una compensación razonable. Después de radicarse la contestación y de celebrarse el juicio ante la Corte de Distrito de Ponce, ésta dictó sentencia en contra del demandante respecto a esta reclamación por sus servicios.

La teoría de la corte fué que durante su vida, Félix Saurí recibió treinta dólares semanales como uno de los administradores de Saurí y Subirá; que al ocurrir su muerte, según

se había convenido anteriormente, y con el consentimiento de todos, Rafael Saurí substituyó a su padre; que Rafael Saurí, al tiempo de aceptar la administración, nada hizo para modificar la compensación ni nada hizo posteriormente para reclamar una remuneración mayor; que cuando finalmente se terminó la liquidación de la firma Saurí y Subirá, el demandante continuó administrando los bienes de la sucesión y recibiendo la misma compensación. En lo tocante a este último extremo, la corte aceptó la declaración de José Saurí, y entonces llegó a la conclusión de que en ningún momento Rafael Saurí hizo manifestación o gestión alguna ni realizó acto alguno tendente a poner de manifiesto su inconformidad o descontento por su conmpensación o crédito como tal administrador.

El único señalamiento de error presentado lee así:

"La corte erró al estimar que la aceptación por Don Rafael Saurí del cargo de administrador de los bienes de la Sociedad 'Saurí y Subirá' en representación de la Sucesión Saurí con las mismas facultades que tenía el socio fallecido Don Félix Saurí implica la renuncia por parte de Don Rafael Saurí a percibir compensación superior a la percibida por su señor padre Don Félix o sean $30.00 semanales.''

Por la prueba presentada, la corte estuvo enteramente justificada al llegar a su teoría del caso. La prueba es clara de que Rafael Saurí recibió los treinta dólares semanales que su padre había percibido mientras vivió, que de acuerdo con una estipulación directa, él continuó percibiendo esa cantidad mientras duró y se liquidó la firma de Saurí y Subirá; y que después de la disolución final, él consintió directamente en recibir de su madre, hermano y hermana la suma de treinta dólares, o en silencio aceptó esta cantidad sin protesta o sin hacer indicación alguna respecto a su derecho de recibir una remuneración mayor. Tan es esto así que creemos que el demandante prácticamente aceptó los hechos, y basó su reclamación de compensación en un *quantum meruit*.

Sobre este particular, en la demanda se alegan algunos

de los hechos anteriores indisputables, o quizá otros más, y entonces se alega que la ocupación y profesión del demandante era la de agricultor y administrador de fincas agrícolas. Expone los varios servicios prestados por el demandante y los beneficios reportados a la comunidad, y entonces se dice que el demandante no ha recibido durante su administración remuneración alguna por su trabajo, actividades y servicios como administrador, habiendo tomado únicamente para los gastos de un viaje diario de Ponce a las fincas, y para los gastos indispensables e incidentales a su ocupación, una cantidad semanal no mayor de treinta dólares. Aquí la demanda también dice ''de acuerdo con los demás condueños.'' Entonces la demanda continúa diciendo que la suma de seis mil dólares anuales sería una compensación razonable de sus servicios, de la cual debía deducirse la suma tomada semanalmente, y procede a reclamar la cantidad de $36,000, con la deducción de $7,230. De la demanda misma es evidente que Rafael Saurí percibía la suma de treinta dólares semanales como remuneración, y que él deduce dicha suma de su reclamación de compensación razonable.

El artículo 1613 del Código Civil dispone lo siguiente:

''A falta de pacto en contrario, el mandato se supone gratuito.

''Esto no obstante, si el mandatario tiene por ocupación el desempeño de servicios de la especie a que se refiere el mandato, se presume la obligación de retribuirlo.''

Resolvemos o llegamos a la conclusión de que el caso de Rafael Saurí no cae bajo este artículo. Se convino que él se haría cargo de los bienes de la comunidad, pero no fué empleado como agricultor o como agente agrícola, dentro del significado del estatuto. El administraba sus propios bienes, en unión a los de su madre, hermano y hermana, y podemos decir que se le permitió hacerlo así como se hubiera permitido que lo hiciera su madre, quien era dueña de la mitad de la comunidad. Estamos discutiendo solamente el derecho a percibir compensación sin existir convenio. Por lo general,

cuando en una comunidad se trata de parientes muy cercanos, o aun en cualquier clase de comunidad de bienes, el consentimiento o convenio por parte de los otros dueños para que uno de ellos administre los bienes, no implica promesa de pago, que es la base familiar de la acción de *assumpsit* de Inglaterra y Estados Unidos. Bajo estas circunstancias, aun en los Estados Unidos no se establecería por implicación un contrato por servicios razonables. En Puerto Rico, un convenio de servicios debe ser explícito, a menos que caiga dentro de alguna excepción.

El artículo 1486 del Código Civil, según fué enmendado, no es una excepción. Lee así:

"Pueden arrendarse los servicios de criados y trabajadores sin tiempo fijo o por cierto tiempo. El arrendamiento hecho por toda la vida es nulo. En cuanto a los servicios profesionales, se estará para la remuneración de los·mismos, a lo convenido entre las partes: cuando no hubiere convenio y surgieren diferencias, la parte· con derecho a la remuneración podrá reclamar y obtener en juicio· de la otra parte, ante cualquier corte de jurisdicción competente, el. importe razonable de dichos servicios."

Los servicios profesionales mencionados en ese artículo no cobijan este caso, no sólo por las razones generales que anteriormente se han indicado, sino también porque la palabra "profesional" debe tener algún significado. Es aplicable a personas que tienen una profesión definida, y no a agricultores, mecánicos u obreros. De lo contrario, todo el mundo podría alegar que tiene una profesión.

Más particularmente, convenimos con la corte y los apelados en que hubo un convenio expreso sobre remuneración, y el apelante no nos ha presentado hechos o argumentos que permitan una compensación adicional.

Lo que en realidad sucedió, según se indica en la declaración de Rafael Saurí, fué que él sólo se hizo cargo de la administración confiando en que su madre, su hermano y su hermana, se portarían bien con él. Al igual que sucede con muchas otras personas, él dejó de celebrar un convenio

específico. Probablemente, si sus relaciones hubiesen continuado amigablemente, su familia no le hubiese negado una reclamación de una compensación mayor. Pero entonces también hay la probabilidad razonable de que él no se hubiese ocupado de hacer reclamación alguna. Por otra parte, sus parientes no estaban satisfechos con su administración, especialmente porque él no empleó un tenedor de libros. También dieron muestras de descontento en cuanto a otros respectos. Sin embargo, sus parientes no dudaron de su honradez. Decimos esto, porque cuando un hombre trata aun con sus familiares, debe ser específico ; de lo contrario, cuando surge una duda sobre el valor razonable de sus servicios, éstos pueden ser atacados. Si los · demandados hubiesen estado satisfechos, probablemente todo este litigio nunca hubiese surgido. No puede afectar el caso, por ejemplo, el que el demandante estuviera recibiendo tres mil dólares de sueldo de Saurí y Subirá, o que su madre estuviera dispuesta a pagarle tres mil dólares.

Si bien el tribunal está de acuerdo con las anteriores conclusiones, sentimos que no nos sea posible desarrollar este extremo del caso en forma más elaborada, pero el tiempo nos ha faltado debido a la aglomeración de trabajo. Tan es ello así que nos ha sido enteramente imposible resolver a satisfacción el otro aspecto del caso, o sea, la apelación de los demandados, habiendo hasta ahora divergencia de criterio entre nosotros. Nuestra idea original fué celebrar la vista del caso ante la corte en pleno, y lo señalamos para el mes de noviembre último. Debido al hecho de que sólo fué posible oír el caso ante cuatro jueces, creemos prudente señalar el otro aspecto del mismo nuevamente para ante el tribunal en pleno.

Por tanto, *resolvemos* que la apelación entablada por Rafael Saurí no procede, y que *debe confirmarse la sentencia* en tanto en cuanto declara sin lugar la segunda causa de acción mencionada en la demanda.

El Juez Asociado Sr. Texidor no intervino.